IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOULEY VEGAN LLC,<br><br>Plaintiff,<br><br>v.<br><br>DEBORAH WEBB,<br><br>Defendant. | Case No. 18-cv-07514-CRB<br><br>**ORDER GRANTING MOTION TO SET ASIDE DEFAULT, DENYING MOTION TO DISMISS, AND GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT** |

Souley Vegan LLC ("Souley Vegan") settled its Lanham Act and California unfair competition claims against defendants Deborah, Leroy, and Yachidiyel Webb (collectively, "Webb") in an agreement requiring Webb to replace the name "Souly Vegan Café" with "SooGood Vegan Café." Webb violated the Settlement Agreement by continuing to use the name "Souly Vegan Café" and taking steps to adopt a new name other than "SooGood Vegan Café." Souley Vegan sought and received a default judgment against Webb.

These motions followed. First, Webb moves to set aside the default. Mot. to Set Aside Default (dkt. 20). The motion is unopposed, so it will be granted. Second, Webb moves to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue. Mot. to Dismiss (dkt. 23). Because Webb waived objections to personal jurisdiction and venue explicitly, in the Settlement Agreement, and implicitly, by failing to raise those defenses in her motion to set aside the default, the motion to dismiss will be denied. Third, Souley Vegan moves to enforce the Settlement Agreement. Mot. to Enforce (dkt. 26). Because none of Webb's claimed defenses to enforcement of the agreement apply, Souley Vegan's motion will be granted.

## I. BACKGROUND

Souley Vegan is a vegan soul food restaurant in Oakland, California. Dyson Decl. ¶¶ 3–4

1 (dkt. 33). Souly Vegan Café is a vegan soul food restaurant in Durham, North Carolina. Cheruvu Decl. Ex. A ¶ B (dkt. 26). The similar names have led to various mix-ups, such as social media posts tagging the wrong restaurant, orders placed with the wrong establishment, and employees calling in sick to the wrong employer. Dyson Decl. ¶ 10.

After hearing about Souly Vegan Café from a customer, Id. ¶ 8, Souley Vegan sent Webb multiple cease-and-desist letters, Supp. Cheruvu Decl. Exs. A; C (dkt. 33). Webb's then-attorney, James Ruane, replied that Webb did not believe there was any danger of consumer confusion. Id. Ex. B. Unsatisfied with this response, Souley Vegan filed suit, bringing Lanham Act claims for trademark infringement and false designation of origin as well as a California unfair competition claim. Compl. at 7–10 (dkt. 1).

Soon after Souley Vegan filed the instant action, Souly Vegan Café shareholder and former manager Vinston Wickers contacted Souley Vegan's lawyer, Padmini Cheruvu, to initiate settlement negotiations. Cheruvu Decl. Ex. C. For the next four months, Cheruvu and Vickers discussed a possible settlement agreement by phone and email. Id. Negotiations focused on finding a mutually acceptable new name for Webb's restaurant. Id. At one point, Cheruvu offered to draft an agreement allowing Webb to choose any new name other than "SoulGood Café," "SoulGood Vegan Café," or "Soul-licious Vegan Café." Id. But in the end, the parties settled on a specific new name for Webb's restaurant: "SooGood Vegan Café." Id.

The Settlement Agreement was signed April 9, 2019, by Souley Vegan owner Tamearra Dyson and defendants Deborah, Leroy, and Yachidiyel Webb. Errata Ex. 1 at 6 (dkt. 32). It requires Webb to cease using the name "Souly Vegan Café" and adopt the name "SooGood Vegan Café" within thirty days. Id. ¶¶ 1–3. The Settlement Agreement's forum selection clause provides that "[t]he United States District Court for the Northern District of California, or the appropriate state court in the city and county of Alameda, shall have exclusive jurisdiction over any legal action or proceeding arising out of or relating to this Agreement." Id. ¶ 17. The forum selection clause waives any objection to the personal jurisdiction or venue of those courts. Id.

Webb violated the Settlement Agreement by continuing to do business as Souly Vegan Café after the thirty-day phase-out period ended, failing to adopt the name "SooGood Vegan

Café," and attempting to adopt the name "Soul Good Vegan Café." Cheruvu Decl. ¶¶ 7–13. In response, Souley Vegan moved for entry of default, on the grounds that Webb failed to timely appear or respond to the complaint. Mot. for Default (dkt. 16). Default was entered June 5, 2019. Entry of Default (dkt. 18).

Nearly two months later, Webb moved to set aside default, Mot. to Set Aside Default, which Souley Vegan does not oppose, Statement of Non-Opp'n (dkt. 30). Webb subsequently filed a motion to dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer venue. See generally Mot. to Dismiss. Souley Vegan then filed a motion to enforce the Settlement Agreement. See generally Mot. to Enforce.

## II.     MOTION TO DISMISS

### A.     Legal Standard

#### a.     Dismissal for Lack of Personal Jurisdiction

A defendant may challenge the Court's personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden of establishing the Court's personal jurisdiction over the defendant. Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir. 1984). "When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). This standard is satisfied if the plaintiff produces admissible evidence which, if believed, would be sufficient to establish personal jurisdiction. See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clemens Ltd., 328 F.3d. 1122, 1129 (9th Cir. 2003). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and factual conflicts must be resolved in the plaintiff's favor. Id.

#### b.     Dismissal for Improper Venue

Federal Rule of Civil Procedure 12(b)(3) provides that if an action is brought in the wrong court, a defendant can move to dismiss for improper venue. In deciding such a motion, the pleadings need not be accepted as true and the Court may consider facts outside the pleadings. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004). All reasonable inferences

and factual conflicts should be resolved in favor of the non-moving party. Id. at 1138.

### B. Discussion

#### a. Forum Selection Clause

Webb waived objections to personal jurisdiction and venue by expressly agreeing to the forum selection clause in the Settlement Agreement. Opp'n to Mot. to Dismiss at 5 (dkt. 33). Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). A party challenging enforcement of a forum selection clause has a "heavy burden of proof." Id. at 17.

Since the only remaining issue in this case is whether the Settlement Agreement should be enforced, this proceeding "aris[es] out of or relat[es] to" the Settlement Agreement. Webb makes no argument that enforcement would be "unreasonable." See generally Mot. to Dismiss. The Court will therefore enforce the Settlement Agreement's forum selection clause and deny the motion to dismiss.

#### b. Waiver

Webb also waived her objections to personal jurisdiction and venue by "failing seasonably to assert" them. Opp'n to Mot. to Dismiss at 6–8; Hoffman v. Blaski, 363 U.S. 335, 343 (1960). "[C]ertain defenses under Fed.R.Civ.P. 12"—including personal jurisdiction, venue, and insufficiency of process—"must be raised at the first available opportunity or, if they are not, they are forever waived." American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1106 (9th Cir. 2000). The "first available opportunity" includes the first responsive pleading, a Rule 12 motion, or a Rule 55(c) motion to set aside a default judgment. Id. at 1107.

Webb's Rule 55(c) motion does not raise either personal jurisdiction or venue as a defense. See generally Mot. to Set Aside Default. Because Webb failed to raise personal jurisdiction or venue as a defense "at the first available opportunity" both defenses are waived.

This rule also forecloses Webb's argument, introduced in her reply brief and emphasized at the motion hearing, that the action should be dismissed because Leroy and Yachidiyel Webb were never served. Reply in Support of Mot. to Dismiss (dkt. 38). Webb's 55(c) motion claims Leroy

4

and Yachidiyel Webb were never served, Mot. to Set Aside Default ¶ 9, but it does not assert insufficient process as a defense, id. ¶¶ 14–18. In any event, this argument is also waived because it was raised for the first time in Webb's reply. Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

## III. MOTION TO ENFORCE THE SETTLEMENT AGREEMENT

### A. Legal Standard

"[A] district court has the equitable power to enforce summarily an agreement to settle a case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). However, if "material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing."[1] Id.

### B. Discussion

Webb does not deny having signed the Settlement Agreement or violating its terms. See generally Opp'n to Mot. to Enforce (dkt. 34). Instead, she asserts four California contract law defenses to enforcement of the agreement: undue influence, mistake of fact, mistake of law, and fraud. Id. at 6; see also Wilcox v. Arpaio, 753 F.3d 872, 876 (9th Cir. 2014) (state contract law governs whether or not the parties reached an enforceable agreement settling federal and state law claims).

#### a. Undue Influence

Undue influence includes "taking an unfair advantage of another's weakness of mind." Cal. Civ. Code § 1575. California courts interpret this definition as encompassing two elements: "undue susceptibility in the servient person and excessive pressure by the dominant person." Odorizzi v. Bloomfield School Dist., 54 Cal. Rptr. 533, 540 (Cal. Ct. App. 1966). When, as in this case, there is no confidential relationship between the parties to the agreement, the party claiming undue influence has the burden of proof. Olam v. Congress Mortg. Co., 68 F. Supp. 2d 1110, 1139–40 (N.D. Cal. 1999). The claimant must prove both elements—undue susceptibility and

---

[1] No material facts regarding the existence or terms of the Settlement Agreement are in dispute. Webb's defenses fail even if her factual assertions are accepted as true. In any event, neither party has requested an evidentiary hearing. Erdman v. Cochise Cty., 926 F.2d 877, 879 n.2 (9th Cir. 1991) (evidentiary hearing not required because it was not requested by either side).

5

undue pressure—to escape a contract. Id. at 1141.

"Undue susceptibility may consist of total weakness of mind which leaves a person entirely without understanding; or, a lesser weakness which destroys the capacity of a person to make a contract even though he is not totally incapacitated." Odorizzi, 54 Cal. Rptr. at 540 (internal citations omitted). "[L]ack of full vigor due to age, physical condition, physical exhaustion, and emotional anguish" may support a finding of undue susceptibility. Olam, 68 F. Supp. 2d at 1141. However, even "age, physical condition, and suffering of pain," will not support setting an agreement aside "if the party seeking rescission exercised a free and untrammeled mind." Id. (internal alterations omitted).

Webb argues that she was unduly susceptible when she agreed to the Settlement Agreement for two reasons. First, according to her, she did not personally participate in the settlement negotiations. Opp'n to Mot. to Enforce at 6–7. However, Webb acknowledges that defendants Leroy and Yachidiyel Webb participated in settlement negotiations, as did Souly Vegan investor Vickers. Id.; see also Cheruvu Decl. Ex. C. Webb does not explain why not participating in the settlement discussions made her unduly susceptible, and she cites no authority suggesting that every party to a contract must personally participate in negotiations to avoid a finding of undue susceptibility. If anything, case law suggests the opposite. The participation of third-party advisors militates against a finding of undue influence. Odorizzi, 54 Cal. Rptr. at 541.

Webb also suggests she was unduly susceptible because she signed the Settlement Agreement after returning from a trip to Ghana, when she "was likely under mental distress due to exhaustion and jet lag." Opp'n to Mot. to Enforce at 7. Given the fact that "sickness, senility, or old-age" are generally required to demonstrate undue susceptibility, Cassidy v. Tenorio, 856 F.2d 1412, 1417 (9th Cir. 1988), the temporary effects of jet lag would not be sufficient to "destroy[ ] the capacity of a person to make a contract," Odorizzi, 54 Cal. Rptr. at 540.

Even if Webb could show that jet lag made her unduly susceptible, she cannot prevail because she cannot prove undue pressure, the other element of undue influence. See Olam, 68 F. Supp. 2d at 1141. The following factors support a finding of undue pressure: "(1) discussion of the transaction at an unusual or inappropriate time, (2) consummation of the transaction in an

6

unusual place, (3) insistent demand that the business be finished at once, (4) extreme emphasis on the untoward consequences of delay, (5) the use of multiple persuaders by the dominant side against a single servient party, (6) absence of third-party advisers to the servient party, and (7) statements that there is no time to consult financial advisers or attorneys." See Odorizzi, 54 Cal. Rptr. at 541.

Webb claims three of those factors were present here.[2] She argues that Souley Vegan insisted "that the business be finished at once" and placed "extreme emphasis on the untoward consequences of delay." Opp'n to Mot. to Enforce at 8. However, Webb's only evidence of this ostensibly coercive behavior are emails from Cheruvu warning Vickers that upcoming court deadlines require Souley Vegan to serve its complaint by a certain date unless the parties settle. Cheruvu Decl. Ex. C. Notifying the other party of court deadlines and threatening to serve a complaint does not constitute undue pressure. See Tenorio, 856 F.2d at 1418 (finding no undue pressure where the defendant was notified of the plaintiff's "necessary recourse to legal action if his demand was not satisfied").

Webb also claims Souley Vegan used "multiple persuaders" to convince her to sign the Settlement Agreement. Opp'n to Mot. to Enforce at 8. She argues that because Vickers relayed Souley Vegan's communications to her, he acted as an additional "persuader" pressuring her to sign the Settlement Agreement. Id. Previous Northern District of California decisions have rejected "any attempt . . . to include as a source of 'undue influence' the complaining party's own lawyer," reasoning that "[e]xpand[ing] the doctrine in this way would encourage clients and counsel to manufacture bases for trying to avoid commitments otherwise fully enforceable." Olam, 68 F. Supp. 2d at 1150. This logic applies here. Although Vickers is not a lawyer, he acted as Webb's representative during the negotiations. See Cheruvu Decl. Ex. C.

Finally, Webb complains that although "the end Agreement contained multiple provisions and parts, the discussions centered only on a new name for Defendant's restaurant." Opp'n to

---

[2] Webb also notes that the defendants lacked "third party legal counsel during the discussions." Opp'n to Mot. to Enforce at 8. To the extent she is suggesting that this implicates the sixth undue influence factor, she is incorrect. It is undisputed that Vickers, a third-party adviser, participated throughout the settlement negotiations. See Odorizzi, 54 Cal. Rptr. at 541.

7

Mot. to Enforce at 8. Webb fails to cite any authority for the proposition that every clause of a contract must be actively negotiated to avoid a finding of undue influence. Indeed, such a rule would make little sense. It stands to reason that the most negotiated aspect of the Settlement Agreement would be its most important provision—the new name of Webb's restaurant. The fact that other boilerplate provisions were not discussed simply suggests they were not important to either party, not that Webb was coerced into signing the agreement.

### b. Mistake of Fact

California law defines a mistake of fact as "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in 1.) An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or, 2.) Belief in the present existence of a thing material to the contract, which does not exist." Cal. Civ. Code § 1577.

Webb identifies two mistakes of fact which ostensibly justify rescission of the Settlement Agreement. First, although Webb acknowledges that the Settlement Agreement requires her to adopt the name "SooGood Vegan Café," she claims she mistakenly believed that it was only going to specify three names she could not adopt. Opp'n to Mot. to Enforce at 9. This argument fails, because California courts "will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of, or to have misunderstood, the provisions of the contract." Hedging Concepts, Inc. v. First All. Mortg. Co., 49 Cal. Rptr. 2d 191, 198 (Cal. Ct. App. 1996).

Webb also claims that a provision of the contract asserting that both parties enjoyed legal counsel demonstrates that she forgot that she was not, in fact, represented by a lawyer. Opp'n to Mot. to Enforce at 9. Even assuming such a mistake of fact is possible, Webb's legal representation (or lack thereof) was not material to the agreement. "In establishing a material mistake regarding a basic assumption of the contract, the defendant must show that the resulting imbalance in the agreed exchange is so severe that it would be unfair to require the defendant to perform." Donovan v. RRL Corp., 27 P.3d 702, 717 (Cal. 2001). This standard is satisfied by showing "that the exchange not only is less desirable for the defendant but also is more advantageous to the other party." Id. In other words, it assumes a mistake going to the substance

8

of the agreement. Webb's claimed mistake goes only to the negotiation process. She does not argue that her lack of representation rendered the Settlement Agreement severely imbalanced.

Instead, she argues her claimed mistake is material because "the majority of the Agreement terms were never negotiated" and "the lack of legal counsel in agreement negotiations can be a factor in [rescission] of the agreement." Opp'n to Mot. to Enforce at 9. But, as discussed above, the most important terms of the agreement were negotiated at length. See Cheruvu Decl. Ex. G. And Webb had a third-party advisor, which satisfies the undue influence factor she appears to be referencing. See Odorizzi, 54 Cal. Rptr. at 541. These arguments fail to demonstrate that legal representation was material to the Settlement Agreement.

### c. Mistake of Law

California defines a unilateral mistake of law as "[a] misapprehension of law by one party, of which the others are aware at the time of contracting, but which they do not rectify." Cal. Civ. Code § 1578. Webb once again claims she forgot that she lacked counsel to argue that she made a unilateral mistake of law justifying rescission. But the non-existence of her lawyer is a matter (and thus a mistake) of fact, not a misapprehension of law. As discussed above, this claimed mistake of fact is not material to the Settlement Agreement, and therefore does not constitute a defense to its enforcement.

### d. Fraud

"Actual fraud involves conscious misrepresentation, or concealment, or non-disclosure of a material fact which induces the innocent party to enter the contract." Odorizzi, 54 Cal. Rptr. at 538. The complaining party must show "misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damage." Id.

Webb claims that the Settlement Agreement fraudulently represents that she was represented by counsel during settlement negotiations. Opp'n to Mot. to Enforce at 10. But she seems to argue that the purported fraud is intended to deceive the Court, rather than to trick her into entering the agreement. Opp'n to Mot. to Enforce at 10. To the extent Webb is arguing Souley Vegan attempted to trick the Court, rather than any party to the agreement, she fails to state a claim for fraud. To the extent Webb argues that she relied on Souley Vegan's supposed

9

misrepresentation, her reliance would not be justifiable. It would be entirely unreasonable for Webb to rely on the Settlement Agreement's statement that she was represented by counsel, if she had not, in fact, consulted a lawyer during the settlement negotiations.

### e. Costs and Fees

Souley Vegan's motion to enforce the settlement agreement asks the Court to order Webb to pay costs and attorneys' fees. Mot. to Enforce at 9. Local Rule 54 provides that a prevailing party may file a bill of costs and motion for attorneys' fees within fourteen days of entry of judgment. Local Rule 54-2; 54-4. Requests for costs and fees must be supported by specific documentation. Local Rule 54-1; 54-5. Additionally, before a motion for fees is filed, the parties must meet and confer to try to resolve any disputes related to attorneys' fees. Local Rule 54-5(a). The Court will consider Souley Vegan's request for costs and fees once it has filed a motion supported by the required documentation and otherwise in compliance with the Local Rules.

## IV. CONCLUSION

For the foregoing reasons, the motion to set aside default is GRANTED, the motion to dismiss is DENIED, and the motion to enforce the Settlement Agreement is GRANTED.

**IT IS SO ORDERED.**

Dated: October 24, 2019

_____
CHARLES R. BREYER
United States District Judge